# Walker *v.* Gilbert, Bailey and Draper.

Where a judgment at law is obtained against a defendant without notice, a court of equity will grant relief, provided the complainant shows that he has a substantial and meritorious defence against the judgment at law.

The rule would seem now to be settled, that a deed unduly registered, either from the want of a valid acknowledgement or otherwise, is not notice to subsequent purchasers. (Were this a new question, this court would have held that a defect or informality in the certificate of a deed which had been registered, did not divest it of its substantial legal attributes.)

The registration of a deed conveying a mere *equitable* title, is not notice to subsequent purchasers; the statute operates upon none other than deeds conveying the *legal* estate.

The possession of land by the vendee under an unregistered deed, is such evidence of title as amounts to constructive or implied notice to creditors or subsequent purchasers.

If a creditor, at the time he obtains his judgment, has notice that his debtor had previously conveyed his estate to another by an unregistered deed, this notice places him in the same situation, in the contemplation of a court of equity, in regard to that deed, as if it had been duly registered.

The law is well settled, that the lien of a judgment creditor upon the lands of his debtor is subject to all equities which existed in favor of third persons against such lands at the time of the recovery of the judgment, and a court of chancery will limit such lien to the actual interest which the judgment debtor has in the estate.

The bill in this case charges that on 23d of November, 1840, defendants took judgment against complainant by default, in the circuit court of Madison county, as security for Fall and Puckett, for $900, beside costs; that execution issued, which was levied on his property; that he had no notice of said suit until the judgment by default was taken against him and an execution placed in the hands of the officer; that the writ was not served on him personally, and if a copy was left at his house he never heard of it; that said judgment was rendered on a note, which was lost or mislaid, dated 7th of April, 1838, executed by George R. Fall and Samuel Puckett as principals, and complainant as security or indorser; that the consideration of said note was a lot in the town of Madisonville, that Puckett and Fall purchased from Enloe Johnson

Walker *v.* Gilbert, Bailey and Draper.

and Co. and a deed was executed for the same to Puckett alone on that day; that he had no interest in said purchase, but was a mere accommodation indorser or security; that they bought of Burroughs on the 10th of April, 1837; that he bought of Williams and Walker on 28th of May, 1836; that they purchased of John S. Gooch on the 11th January, 1836; that the deed from Gooch was not proved or acknowledged, and recorded according to law; that a judgment was rendered on 22nd October, 1836, against Gooch and Williams in favor of C. Marsh and Co., and that said lot was sold as their property, to satisfy said judgment, on 19th August, 1840; that the legal title to said lot when sold was in Gooch, the deed from him not having been acknowledged or framed according to law; that complainant was a mere security on said note, and derived no advantage from said contract; and that the consideration has entirely failed.

The prayer of the bill is, for an injunction, or a new trial at law. An injunction was granted by the circuit court of Madison county.

The answer of defendants admits the allegations of the bill, except as to notice of the pendency of the suit; admits the judgment and sale of the lot under it, but sets up, by way of avoidance, that they believe complainant knew the said judgment had been paid before the sale, and that he became the purchaser for a small sum, which they are willing to refund him if the court should so direct; that the complainant has the property in possession, and has removed some of the buildings; and that Puckett has never been legally dispossessed of said lot, so far as they can learn and believe.

The defendants moved to dissolve the injunction on bill and answer.

John B. Forester for complainant.

The complainant alleges in his bill that he was a mere indorser or security on the note given for said lot, and that he derived no advantage from the purchase of the same.

The answer denies that he was indorser, and states that defendants do not know whether it appeared by said note that he was surety, or whether he was so in fact or not.

In this motion this amounts to an admission of the facts. In addition to this, the answer admits that the note was given for said lot, and that the deed was made to Samuel M. Puckett, thereby showing that complainant had no interest in the trade; if so, he had as much right to purchase as a stranger. I know it is stated by some authorities when one purchases land from another for a stipulated price, and there is no fraud in the sale, and he afterwards buys in the paramount title, that he can only resist the payment of such portion of the purchase money as he has expended in perfecting his title; because that secures the vendee the property at the price he stipulated to give. But even this principle has been doubted. How can this apply to a mere security or indorser? he never stipulated to receive any thing, but to insure that his principal would pay the money according to his contract. The conveyance under this contract vested the title to the lot in Puckett. Complainant, who was his security, purchased at execution sale. If he acquired a good title, then Puckett has no title, nor has he any claim upon complainant, either legal or equitable, to make him a title. Then, so far as Puckett is concerned, the consideration of the note has entirely failed; because Puckett has not got the property that he contracted for, and that was attempted to be conveyed to him; and the contract on that account could not be enforced either legally or equitably against Puckett—he getting no consideration for said note, cannot be compelled to pay it. The undertaking of complainant was that his principals should pay this money, and if they failed to do so that he would do it for them. They being relieved by a failure of the consideration from paying it, releases him of course.

The next question is, did a legal title pass to complainant by the execution sale? The sale by Gooch is made on the 11th January, 1836; a deed executed and acknowledged in these words, to wit: "Acknowledged by John J. Gooch, before me, a justice of the peace for Madison county, this 11th day of January, 1836. Chs. Moore, J. P." The judgment against Gooch was obtained on the 10th day of October, 1836, and the question is whether the title had passed out of Gooch so as to prevent said judgment from being a lien upon said lot as against a judgment creditor. In How. & Hutch. 343, sec. 3, "all deeds are void as to all creditors

and subsequent purchasers for a valuable consideration without notice, unless they shall be acknowledged or proved and lodged with the clerk of the proper county, to be recorded according to the provisions of this act." In page 344, it must be done within three months. By the 1st sec. of said act, page 343, no estate in lands could be conveyed unless declared in writing, sealed and delivered; nor was the conveyance good against any creditor unless the vendor acknowledged that he signed, sealed and delivered the same as his voluntary act and deed (or the same was proved) before some judge or justice, &c. and a certificate of such acknowledgment or proof, written on or under said deed, and signed by said judge or justice, and lodged with the clerk to be recorded. Sec. 12, chap. 345, says, the acknowledgment or proof, before the same is admitted to record, shall be certified by the judge or justice in the form or effect following, to wit: that he signed, sealed and delivered the same, on the day and year therein mentioned, as his act and deed. And sec. 7, page 344, says, no deed shall be recorded unless acknowledged or proved and *certified* in the manner directed by this act.

From this it is manifest that this deed was not properly recorded, as there was no legal certificate upon it. A deed unduly registered, either from want of a valid acknowledgment or otherwise, is not notice to any one. 4 Kent, 174; 2 Bin. 40; 3 Cranch, 140; 1 John. Ch. R. 300.

From this it will be seen that the conveyance from Gooch, as to his creditors, was void—for the language of the statute is general—*"any creditor;"* and the purchase by complainant at execution sale was valid, and vested a complete title.

It appears from the answer that complainant holds possession of the property under the execution sale, and has removed some of the buildiings, &c. The only remaining question is as to his failure to make defence at law. The bill states positively that he had no notice of the suit until judgment by default and execution; that there was no personal service, and if any copy was left he never heard of it. These are facts within his own knowledge, about which defendants of course could know nothing. They say they believe that he was notified, and expect to be able to prove it; but no proof was introduced. They set up, by way of

defence, that the return of the sheriff is conclusive. Suppose this principle, for the sake of argument, to be correct, does this positive allegation of the bill contradict the return? There are two modes to execute process: one by personal service, the other by leaving a copy at his residence, and the return of the sheriff "executed," would be good in either case. Then the gist of the thing is knowledge, sworn to by him, and not contradicted by the sheriff's return or the answer. But I insist that the return of the sheriff, if it did contradict the allegations of the bill, is only *prima facie* evidence of its truth; and the statements of the bill on this motion must prevail. 5 How. 43, 71, Jones *v.* Commercial Bank, and Williams *v.* Crutcher.

A. H. HANDY for defendants.

First. As to want of notice of the suit at law. The return of the sheriff cannot be impeached in this collateral proceeding, and is conclusive between the parties. If it is false, the remedy of complainant is against the sheriff. This is the rule at law, and it is the same in equity; and unless the complainant makes out such a case as would have been available to him as a defence at law, he cannot obtain relief in equity for want of notice when it appears that if he had had notice he could not have availed himself of the defence he sets up, either at law or in equity.

Second. It is clear that the defence set up by complainant is not such as to entitle him to relief at law or in equity. There is no allegation of fraud, and there has been no eviction. On the contrary, the purchasers (or their surety) are in possession of the premises, and have removed buildings therefrom, thereby altering the character and value of the property, and deriving benefit from the purchase. Under such circumstances, the payment of the purchase money cannot be resisted. 1 J. C. R. 213; 2 ibid. 519; 5 How. 279.

The first conveyance in the chain of title stated by complainant is the deed from Gooch to Williams and Walker, which was dated 11th January, 1836. This conveyance was anterior to the date of the judgment under which the land was sold, which was November 2d, 1836. This conveyance, coupled with possession of the premises, was sufficient to divest the title of Gooch, and to

8*

remove it beyond the reach of the judgment under which it was sold, although the acknowledgment to the deed was defective. 6 Wend. 213; 2 Har. & John. 64.

The possession of Williams and Walker was notice to creditors and subsequent purchasers, and would give them and those claiming under them such a title as a court of equity would assist them in perfecting into a legal title. Sugden Vend. 1st part, 539, bott. p. edit. 1836; 2 Mass. R. 508.

Again: the purchasers are protected by the covenants in the several deeds, to which they may resort for any damage sustained by reason of the alleged defect of title. They have chosen to take those covenants for their security, and to them they must resort.

But, even if the title should be considered defective, by reason of the sale under the execution against Gooch, it is now made perfect by the complainant having become the purchaser under that execution. And the defendants offer to refund to complainant any money he may have paid in perfecting the title, if the court should be of opinion that they should do so. But it is submitted, that the covenants in the deeds of the vendor of the defendants in the execution, and of all the previous vendors of the property, constitute the true and proper source to which complainant must resort for any damage that may have been sustained from the imperfection of the title, and that an innocent indorser (as are these defendants) should not be made to sustain the loss occasioned by the defective title to the purchasers, when there is an ample remedy against the parties who made the contract, and who by their covenants have specially agreed to indemnify the purchasers from all damage that might accrue from an imperfect title. This is the source to which the purchasers, by the act of taking the covenants of warranty, have agreed to look, and this court will now turn them over to that remedy.

These considerations are believed to be sufficient to cause the injunction to be dissolved, without referring to other matters disclosed in the answer, showing that the complainant cannot ask the aid of a court of equity.

The complainant's counsel, in his brief, admits that the property for which the note was given was purchased by the complainant;

Walker *v.* Gilbert, Bailey and Draper.

and this is a perfection of the title to the principal. Complainant's obligation, as surety, was, to see that his principal paid the debt, and it comes with a bad grace from him to refuse to pay the money on account of a failure of consideration, when that *very state of things has been occasioned by the complainant's own act in purchasing the property* at Sheriff's sale. The complainant and his principals were joint makers of the note. He has seen proper to come forward and perfect the title to the premises. Can he, then, defeat his liability on the note by reason of a defect in the title which he has remedied, and will he not be turned over to his principal for the recovery of any money that he may have expended in perfecting the title? He has now the complete title, and is enabled to perfect the same to his principal, and this is what was contracted for by the principal and surety.

It is clear, that if a new trial be granted, as is prayed for, the complainant cannot avail himself of the defence set up in this case.

The CHANCELLOR.

This case was submitted at a former day, upon motion to dissolve the injunction therein, on bill and answer. The whole merits of the case arise upon the motion. The only allegations of the bill which I deem it material to notice, are those which state that the complainant became the accommodation indorser for Puckett and Fall, on a note which they gave for the purchase of a lot in the town of Madisonville, the title to which was derived indirectly through John S Gooch; that Gooch, in May, 1836, sold and conveyed to Walker and Williams; they sold and conveyed to Josiah Borrough; he sold to Enloe Johnson & Co., and they sold to Puckett and Fall. That the deed from Gooch to Walker and Williams, although placed upon record, was not acknowledged and certified in the manner prescribed by law, and was not therefore notice to creditors or purchasers. That C. Marsh & Co., having subsequently obtained a judgment against Gooch, caused an execution thereon to be levied on said town lot, under which the same was sold. This sale, it is alleged, divested the title of Puckett and Fall, and consequently produced a failure of the consideration of their note indorsed by the complainant. That suit

was instituted on that note, and a judgment obtained, which is threatened to be made out of the complainant's property. That the writ was returned "executed" as to him, but he alleges that he was not served personally with process, and that if a copy was left at his house, he never heard of it. That he was thus prevented from making his defence at law, and prays for a new trial at law, or a perpetual injunction against the judgment.

The answer of the defendants denies that the complainant had not notice of their suit, and say that the officer's return shows service of process, which they state was actually made, as they will be able to show. They state that the judgment under which the lot was sold, had, they believe, been satisfied, and that the complainant knew it. That he was active in effecting the sale, and bought the lot for a trifle. That Puckett and others had, and continued to have the undisturbed occupancy of the lot in question.

The allegation that the complainant had no notice of the pendency of the suit at law, not being disproved by the answer, is, I think, sufficient to entitle him to come to this court for relief, provided he shows that he has a substantial and meritorious defence against the judgment at law. This must depend upon the fact whether the creditors of Gooch, under whose judgment the town lot was sold, had actual or constructive notice of the prior conveyance made by him to Williams and Walker, and upon the effect of that notice. The certificate indorsed upon the deed simply states that it was "acknowledged" by Gooch before a justice of the peace, who signs the same. This falls far short of complying with the requirements of the statute upon that subject, which provides that the judge or justice taking the acknowledgement shall certify that the grantor acknowledged that he signed, sealed, and delivered the same, on the day therein mentioned, as his act and deed, and that no deed shall be recorded unless acknowledged and certified in the manner directed by the act. Howard and Hutch. Dig. 344, sec. 7.

It is manifest that the deed was not "*so acknowledged and certified*" as to admit to record within the act referred to. The fact, therefore, that it was admitted to record avails nothing, in legal contemplation, in the way of communicating notice. I say, in

legal contemplation, for it is difficult to say why such a deed, spread at large upon the records of the country, would not as effectually give notice of the fact of its existence as though it had been formally and technically certified. To any but a prying, technical conveyancer, who looks through *legal glasses*, such a requisition would convey fully and completely the idea of the existence of a prior conveyance. If the question were a new one, I should be strongly inclined to hold that a mere defect or informality in the certificate of a deed which had been registered, did not divest it of its legal attributes. It is not the less a deed at common law, as between the parties, because of the want of a formal certificate, as between them it need never be certified or recorded. I should have held, the purpose of recording a deed was to communicate notice of the *fact* of its existence, and not of its technical and legal structure. I should have held that there was a material distinction between the effect of recording a defective writing required to be recorded, and recording a perfect one not so required. The one would give notice; the other would not. The attention of the purchaser would be called to the first, because the public records are its proper depository, whilst no such reason would guide him in searching for the latter.

But it is said that the existence of a deed can only be made known through registration by complying with the prescribed forms of the law. And it, perhaps, ill becomes me to question the policy of a rule which has received the sanction of some of the ablest jurists of the United States. The rule would seem now to be settled, that a deed unduly registered either from the want of a valid acknowledgment or otherwise, is not notice. Carter *v*. Champion *et al.*, 3 Conn. Rep. 549; Hester *v*. Fortner, 2 Binn. Rep. 40; 3 Cranch, 140; 1 John. Ch. Rep. 300.

The deed, in this case, from Gooch to Williams and Walker must be considered as an unregistered deed. It becomes important next to inquire what effect notice to a creditor of an unregistered deed has upon his rights, and what is evidence of such notice. These are important questions, and I regret that the statute upon which they depend has, so far as I know, received no judicial construction at the hands of the High Court of Errors. That statute provides, "That all sales and conveyances of land

shall be void as to all creditors and subsequent purchasers, for valuable consideration, without notice," unless acknowledged and recorded in the manner prescribed by the act. Howard and Hutch. Dig. 343, sec. 3. Under this statute it is insisted that the question of notice does not apply to a creditor, and that he is not affected with notice of an unregistered deed from his debtor. I am unable to find any thing in the language, reason or policy of the law sustaining such construction. But whether the statute does, *in terms*, apply notice to creditors or not, makes but little difference in this case, from the view which I take of its legal bearing and effect. The statute has exclusive relation to the modes and forms of conveying the *legal* estate in lands. It therefore concerns *legal estates only*, and does not touch the equity of the parties, but leaves that where it would stand at common law, with reference to a party having notice of it. The clause in the act referred to says: "The *deed* shall be void as to all creditors and subsequent purchasers," &c. That is, it makes the *legal* title remain with the grantor of an unregistered deed, to the extent of enabling him to pass it to a subsequent purchaser, or to subject it to his creditors; but it does not declare that they take it exempt from the prior equity of the first purchaser. It simply takes away the *legal priority* of the grantee of the unregistered deed over the general creditor, but leaves the prior equity untouched. A deed, for instance, may be so defective as not to pass the legal estate, and would not therefore be the proper subject for registration, but would yet create an unquestionable estate in equity in the grantee, which a court of chancery would protect against a subsequent judgment creditor having notice thereof. The statute operates upon none other than *deeds conveying the legal estate*. A deed, therefore, conveying a *mere equitable estate* is not within its provisions.

The truth of the position is shown by repeated decisions that the registration of a deed, conveying a mere equitable title, is not notice to subsequent purchasers, not being the kind of conveyance referred to by the Statute of Registration. Halsted *v.* Bank of Kentucky, 4 J. J. Marsh. Rep. 558; Frost *v.* Beckman, 1 J. Ch. R. 300. The Statute of Registration of the 7th of Anne, ch. 20, is much stronger than ours, as it makes all unrecorded

deeds void as to subsequent purchasers, without any saving in case of notice. Cruise's Dig. part 4, 368–9. Yet Lord Hardwicke said, in reference to that statute, that it had regard only to the legal estate—that it did not take away the equity of the prior incumbrancer, but left that question still open as to him. 3 Atkins, 646; Cruise's Dig. part 4, 378. I incline to the opinion, therefore, that it is immaterial to the protection of the holder of an unregistered deed whether the statute is held to apply as notice to creditors or not, provided he can show that the judgment creditor had notice. I think it is sufficiently shown in this case, by the statement in the pleadings, that Gooch's vendee went into possession of the lot in controversy under his unrecorded deed, and that he, and those claiming under him, held that possession at the time of obtaining the judgment under which it was sold. This, I think, is sufficient.

The possession of land by the vendee under an unregistered deed, is such evidence of title as amounts to constructive or implied notice to creditors or subsequent purchasers; 3 Mass. Rep. 575; Priest *v.* Rice, 1 Pick. Rep. 164; Tuite *v.* Jackson, 6 Wend. 213, and authorities there cited. So in Colly *v.* Kenniston, 4 New Hamp. Rep. 262. While the purchaser under an unregistered deed was in open and visible possession, it was held sufficient notice to protect him against a subsequent purchaser, and to charge the latter with a knowledge of his rights. In Norcross *v.* Wedgery, 2 Mass Rep. 500, Chief Justice Parsons says—"This notice may be express, or it may be implied, from the first purchaser being in the open and exclusive possession of the estate under his deed." The English Courts have held similar language in reference to the question of notice under their registry acts; Sheldon *v.* Cox, 2 Eden's Rep. 228. The only object of the statute of Registration is, to supply the place of the ancient ceremonial of livery of seisin, or in other words, to give notice to all who may become interested, of the change of ownership and title to the estate conveyed. And whenever the notice is actually or impliedly communicated, although through other *mediums*, the whole object and purpose of the statute is as fully attained as if the notice had been derived from actual inspection of the public Records. The plain object of the statute is to secure creditors and subsequent purchasers against

prior secret conveyances. This is the judicial construction which has been given to every statute of Registration from that of the 7th of Ann, ch. 20, down to the present time, and is so perfectly consonant to the spirit and object of such statutes as to render it useless to cite authorities in support of it. The case of Le Neve v. Le Neve, 3 Atkins, 646, decided by Lord Chancellor Hardwicke may be regarded as the leading case upon the subject. If therefore a creditor, at the time when he obtains his judgment, has notice that his debtor had previously conveyed his estate to another by an unregistered deed, this notice places him, in the contemplation of a court of equity, in the same situation in regard to that deed, as if it had been duly registered. It is true that the legal estate as to such creditor is still considered to be in the grantor, but having notice of the prior equitable title of the grantee under the unregistered deed, a court of equity will protect that title against the effects of the judgment. I take it to be a well settled law, that the lien of a judgment creditor upon the lands of his debtor, is subject to all equities which existed in favor of third persons against such lands at the time of the recovery of the judgment, and a court of chancery will limit such lien to the actual interest which the judgment debtor has in the estate; Kiersted et al. v. Avery, 4 Paige, Ch. Rep. 9; in the matter of Howe, 1 Paige, ch. 128. In the case of Martin v. Robards et al. 4 Dana's Rep. 258, the supreme court of Kentucky held that an equitable title to land, created by an unregistered deed, would prevail against the legal title of a purchaser under an execution, who had notice of that equity, that the judgment under which he purchased covered nothing but the legal estate of the first grantor, and left the equity of the first purchaser unaffected. This case is a direct authority for the one now before me, and I refer to it as presenting an able exposition of the doctrine upon this subject. The case of Priest v. Rice, 1 Pick. Rep. 164, is not less in point. It lays down the rule that there is no distinction as to the question of notice between a creditor and subsequent purchaser. Chief Justice Parker says: "The reason is the same in both cases, for if a creditor where debt is due, will stand by and suffer his debtor to sell his land and receive the value of it from one who knows not of his claim nor of his intention to bring an action upon it, and will afterwards attach the same land, there is

Walker *v.* Gilbert, Bailey and Draper,

a constructive fraud upon the first purchaser which ought not to prejudice his title. The execution and delivery of the deed completes the transfer from the grantor to the grantee; the registry is to give notice, that others may not be prejudiced. Actual notice is, to the person affected by it, as useful and ought to be attended with the same consequences as public notice in the registry, and implied notice arising from possession under the deed is as effectual as actual notice." See also Brown *v.* Marine Bank, 11 Mass. Rep. 158, sustaining the same view; and Campbell *v.* Morely, Littell's Select Cases, 358. In the case referred to in 4 Dana, the reasoning of Justice Ewing upon the rights of a creditor against an unrecorded deed are to my mind conclusive. He says, "Though our statutes postpones or annuls the legal title acquired by an unrecorded deed in favor of creditors, it gives to the creditors' demands no higher dignity or greater efficacy than they had before. It neither gives, nor was intended to give to the creditor, any lien or equity upon the property of the debtor, which he had not by the terms of his contract. No promise is made to him, that he shall have a lien, either legal or equitable, on the specific property embraced in an unrecorded deed, or that he shall have the privilege of making his debt out of lands thus situated. This would be to promise him what he had not secured by his own contract, and what the Legislature would perhaps have no constitutional power to afford. But the statute has promised him to sweep away the legal obstruction which the holder of an unrecorded deed has placed in his way, and to enable him to gain the *vantage ground* which a legal title would afford him in a contest with the prior encumbrancer." The case before me presents a striking instance of the injustice which the construction contended for by the complainant is calculated to produce. It would, it seems to me, effectually overturn the very purposes for which the statute was enacted. It was intended to give certainty and stability to the titles to the real estate of the country, and to prevent fraud in their transfer. Here the unregistered, or rather defectively registered deed from Gooch to Walker and Williams, was made in May, 1836; the judgment under which the lot was sold was obtained some six months after, and was not levied until upwards of four years after the date of Gooch's deed, and until the land had passed successively through

the hands of some three or four purchasers, each relying upon having obtained a good title.   To apply the statute to such a case, would be a perversion of its spirit; instead of preventing fraud, it would work the grossest injustice and oppression.   It would set every hungry creditor who has an insolvent debtor to raking over the musty records of the country, to see if he could not make a victim of some honest but incautious purchaser, who, from accident or forgetfulness, had neglected to place his deed upon record, or who as in this case had failed to have his deed rightly certified from the ignorance of the officer taking the acknowledgement. Such a construction, instead of giving security and quietude, would unsettle half the estates in the country, and establish an active trade in the business of champerty and maintenance.   I know it has been said that supposing the question of notice to apply to a creditor, that yet to make an unregistered deed available against him, he must have notice of it at the time when his debt was contracted, and not when his judgment is obtained.   I do not readily perceive the force of this position.   A party, to be entitled to notice, must have some rights that may be affected by the act of which he requires notice.   The law is not chargeable with the folly of requiring notice, when that notice can avail nothing.   It is difficult to conceive what right or interest the holder of a promissory note has to claim notice from the maker, that he has aliened his land.   A creditor at large and before judgment, has no claim to, nor right nor lien upon, the land of his debtor.   It would be idle therefore to require notice to him, of an act which could in no way affect his rights, and which he could not, in any manner, make available in securing his debt.   If the construction referred to were correct, it would seem to follow, that a general creditor might come into this court, to set aside as void, an unregistered deed from his debtor, which surely could not be done.   I am of opinion then, that the judgment of Marsh & Co. *v*. Gooch, was not a lien upon the lot in question; that the sale under it did not divest the title of Puckett and Fall, and consequently that there has been no failure of the consideration of their note, the collection of which the complainant as their accommodation indorser has enjoined.

The injunction must accordingly be dissolved.